UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  

ONLINE PUBLICATION ONLY

------------------------------------------------------------ X
:
CONRAD MARHONE,                                     :
                                                   :
                        *Petitioner,*              :
                                                   :          MEMORANDUM AND ORDER
            - against -                            :
                                                   :          10-CV-3525 (JG)
WILLIAM BROWN,                                     :
                                                   :
                                                   :
                        *Respondent.*              :
------------------------------------------------------------ X

A P P E A R A N C E S :

          CONRAD MARHONE
                # 02-A-2625
                Clinton Correctional Facility
                1156 Rt. 374
                P.O. Box 2001
                Dannemora, New York 12929
                *Petitioner, pro se*

          RICHARD A. BROWN
                Queens County District Attorney
                125-01 Queens Boulevard
                Kew Gardens, New York 11415
          By:   Emil Bricker and John M. Castellano
                *Attorneys for Respondent*

JOHN GLEESON, United States District Judge:

          Conrad Marhone petitions for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  Marhone challenges his March 2002 convictions in New York State Supreme Court,

Queens County, of murder in the second degree, two counts of robbery in the first degree, one

count of robbery in the second degree and one count of criminal possession of a weapon in the

fourth degree.  Appearing *pro se*, Marhone seeks habeas relief on the grounds that he was denied

a fair trial and received ineffective assistance of counsel.  Oral argument was heard on December

14, 2010, at which Marhone appeared via videoconference from his place of incarceration.  For the reasons stated below, Marhone's petition is denied.

BACKGROUND

A.    *The Offense Conduct*

The People's evidence at trial established that shortly before midnight on the evening of June 23, 1999, Marhone and three of his friends or acquaintances – Rami Merchant, "Greg" and "Unique" – convened on 195th Street in Hollis, Queens.  The group met up again later that night in front of an abandoned house on 195th Street and discussed a plan to rob a Chinese food delivery man by giving him $20, quickly taking back the money, grabbing the food and running away.  Although Marhone did not speak much at this meeting, he was carrying a metal baseball bat.  Unique's planned role was to give and then take back the money, and Merchant's was to take the food and run.  Greg rode his bike to a telephone and placed the order for the Chinese food.

When the Chinese food delivery man, Ng Cheung Cheung, arrived at the abandoned house with the food, Marhone was hiding with the bat in the bushes by the front of the driveway, Merchant was hidden on the other side of the house, Unique was directly in front of the house and Greg was across the street.  Cheung parked his van on the opposite side of the street, crossed the street in response to Unique's call and stood in front of the abandoned house. Unique handed Cheung the money, and Marhone then walked up behind Cheung and hit him with the bat behind Cheung's right ear.  Merchant had come out of hiding and faced Cheung as he fell to the ground, and Merchant then picked up the food and ran around the block.  Marhone then swung the bat again and hit Cheung in the chest.  After dealing Cheung this final blow,

Marhone ran around the block to the backyard of a corner house, abandoning the bat somewhere along the way.  The other three men soon joined him and they split up and ate the food.[1]

A few minutes before midnight on the same evening, the police arrived at 100-45 195th Street in response to a call.  Next door to this address was the abandoned house at which the robbery had taken place, and the police observed a man lying on the sidewalk in front of that house and a woman in the street, both yelling and screaming.  Officer Patrick Nee attempted to speak with the woman, but he could not understand her language, which seemed to be Chinese.  Cheung, the man lying on the sidewalk, appeared to be in tremendous pain, was screaming in Chinese and was bleeding profusely from the head.  Cheung was taken by ambulance to the hospital, where he remained in critical condition for a few days.  Cheung died some days later from the injuries he sustained to his skull.

B.    *Procedural History*

1. *The Trial and Sentencing*

Marhone was charged with one count of depraved indifference second-degree murder, N.Y. Penal Law § 125.25(2), one count of felony murder, *id.* § 125.25(3), manslaughter in the first degree, *id.* § 125.20(1), two counts of robbery in the first degree, *id.* § 160.15(1) & (2), one count of robbery in the second degree, *id.* § 160.10(1), and criminal possession of a weapon in the fourth degree, *id.* § 265.01(2).  He proceeded to a jury trial before Justice Richard Buchter of the New York Supreme Court, Queens County.  On March 21, 2002, the jury convicted Marhone of all of the preceding counts.  On April 22, 2002, Justice Buchter sentenced

---

[1]    Rami Merchant was charged with the same offenses as Marhone under the same indictment number (No. 3023/99).  On April 30, 2002, Merchant was convicted after a separate jury trial of felony murder, manslaughter in the second degree, two counts of robbery in the first degree, robbery in the second degree, and criminal possession of a weapon in the fourth degree.  He received concurrent terms of imprisonment on these convictions, the longest of which was a term of 15 years to life on the felony murder count.  After finding no relief in his direct appeal of the judgment of conviction, Merchant filed a habeas corpus petition in this court, which was denied by Judge Dora Irizarry on July 27, 2007.  *Merchant v. Burge*, No. 05-CV-1920 (DLI) (E.D.N.Y. July 27, 2007).  Greg and Unique, the other two participants in the robbery, were never apprehended by the police.

Marhone to a term of incarceration of 25 years to life on each count of second-degree murder, a determinate 25-year term on each count of first-degree robbery, a 15-year term on the second-degree robbery count and a one-year term on the fourth-degree criminal possession of a weapon count, all to run concurrently.

2.     *The Direct Appeal*

Marhone appealed from the judgment of the Supreme Court on the grounds that: (1) the trial court deprived him of his rights to a fair trial and the effective assistance of counsel by denying defense counsel's motions for a recess and a mistrial after counsel announced that he would have to testify to refute the testimony of the People's rebuttal witness and find another attorney to represent Marhone; and (2) there was insufficient evidence on which to convict Marhone of depraved indifference murder and the verdict was against the weight of the evidence, because no rational trier of fact could find that the killer acted recklessly or with the requisite depraved indifference to human life when he killed Cheung.

On December 16, 2008, the Appellate Division, Second Department, modified the Supreme Court's judgment by vacating Marhone's conviction for depraved indifference second-degree murder, vacating the sentence imposed on that conviction and dismissing that count of the indictment. *People v. Marhone,* 870 N.Y.S.2d 375, 376 (2d Dep't 2008). The Appellate Division reviewed Marhone's "unpreserved" legal insufficiency claim as to his depraved indifference murder conviction in the interest of justice, and held, "as the People correctly concede, that the evidence was legally insufficient to support the defendant's conviction of depraved indifference murder." *Id.* (citing, *inter alia*, *People v. Payne*, 3 N.Y.3d 266, 271

(2004)).[2]  The Appellate Division further held that Marhone's remaining contentions were without merit.  *Id.*

Miller applied for leave to appeal from this decision but a judge of the Court of Appeals denied his application on March 18, 2009.  *People v. Marhone*, 12 N.Y.3d 785 (2009) (Ciparick, J.).

3.      *The Motion To Vacate the Judgment*

Marhone moved *pro se* on June 15, 2010 to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10.  Marhone contended in his motion that his indictment was multiplicitous and trial counsel was constitutionally ineffective for failing to object to the indictment on that ground.  He further argued that counsel's failure in this regard could not have been strategic, compromised the fairness of his trial and amounted to structural error, and that if counsel had objected to the indictment's multiplicity, Marhone would have been able to present a "dual defense to counterbalance the multiple theories."  Ex. 2 to Pet., at 13. Marhone also contended that the jury was confused by the presentation of alternate theories of his guilt, which led it to mistakenly find Marhone guilty of both depraved indifference and felony murder.

---

[2]      In *People v. Payne*, the New York Court of Appeals held that "[t]he use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill," and contrasted such an intentional killing with the following prototypical examples of depraved indifference murder: "shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo."  3 N.Y.3d 266, 271, 272 (2004) (quotation marks omitted).  The *Payne* court also recognized that acts "directed against a particular victim" can qualify as depraved indifference murder where they are "marked by uncommon brutality – coupled not with an intent to kill, . . . but with depraved indifference to the victim's plight," such as where a defendant without the intent to kill inflicts continuous beating on a child that results in the child's death.  *Id.* at 271-72.  *See also People v. Hawthorne*, 826 N.Y.S.2d 147, 149, 150 (2d Dep't 2006) (stating that evidence underlying a depraved indifference murder conviction may be found legally insufficient on appeal where the evidence either "demonstrate[s] a manifest intent to kill, thereby negating the core element of recklessness," or "fail[s] to establish the required level of depravity and indifference," and vacating depraved indifference murder conviction on the former ground because defendant struck victim at least ten times in the head with a claw hammer and attempted to strangle him).

On July 26, 2010, Justice Buchter denied Marhone's § 440 motion in a written opinion. The court held that Marhone's ineffective assistance claim was procedurally barred pursuant to New York Criminal Procedure Law § 440.10(2)(c) because it was "an on the record claim which could have been raised on defendant's direct appeal" but defendant "unjustifiably failed to do so." Marhone does not appear to have appealed from this decision to the Appellate Division.

4.      *The Motion for Reargument and Reconsideration*

Marhone filed a motion *pro se* in the Appellate Division on July 10, 2010 seeking reargument and reconsideration of its decision on direct appeal pursuant to New York Criminal Procedure Law § 470.50(3). He asserted that the submission of the subsequently vacated depraved indifference murder count to the jury prejudiced its consideration of the felony murder count, and the depraved indifference murder conviction prejudiced him at sentencing. The Appellate Division denied Marhone's motion on October 14, 2010. *People v. Marhone*, No. 2002-04670, 2010 NY Slip Op. 84987(U) (2d Dep't Oct. 14, 2010).

5.      *The Instant Petition*

Marhone filed this petition on July 28, 2010, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 because: (1) the trial court's denial of defense counsel's motions for a recess and a mistrial after counsel determined that he would have to testify at trial deprived Marhone of a fair trial; (2) Marhone was denied effective assistance of counsel as a result of the trial court's refusal to allow defense counsel to find another lawyer for Marhone in light of counsel's professed need to testify; (3) there was insufficient evidence to sustain Marhone's felony murder conviction;[3] (4) Marhone was deprived of a fair trial as a result

_____

[3]      Strictly speaking, the only explicit sufficiency challenge in Marhone's petition is directed at his depraved indifference murder conviction. For reasons explained below, I construe Marhone's claims to include a

of the inextricable connection between the People's evidence on the depraved indifference murder count and that supporting the felony murder count; and (5) counsel's failure to object to the multiplicity of Marhone's indictment constituted constitutionally ineffective assistance of counsel and deprived Marhone of a fair trial.

DISCUSSION

A.      *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.  28 U.S.C. § 2254(d).  Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*[4]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).  A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an "unreasonable application" of clearly established federal law if a state court

---

sufficiency challenge to his felony murder conviction as well.  I do not review Marhone's sufficiency challenge to his depraved indifference murder conviction because that conviction was vacated on direct appeal.

[4]          This limitation on relief is referred to as "AEDPA deference."  *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

"identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams,* the Second Circuit has added that although "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

In addition to the deference owed to state court determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

B.      *Marhone's Claims*

       1.      *Denial of a Fair Trial*

Marhone claims that the trial court's denial of defense counsel's motions for a recess and a mistrial due to counsel's belief that he would have to testify at trial deprived Marhone of a fair trial.[5]  The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), and defendants' right to call witnesses in their defense "is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment," *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").  While defendants have the right to "put before a jury evidence that might influence the determination of guilt," *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (quotation marks omitted), judges have "wide latitude" to exclude evidence that is repetitive, only marginally relevant, or that poses an undue risk of harassment, prejudice, or confusion of the issues, *Crane*, 476 U.S. at 689-90 (quotation marks omitted).

       a.      *The Facts*

Here, defense counsel, Charles E. Davis, Jr., moved for a recess and then a mistrial in order to rectify what he believed to be an untenable situation caused by the testimony of the People's rebuttal witness, Lillith Merchant.  Ms. Merchant, the mother of Rami Merchant, testified that on one occasion in March or April 2000, she met Marhone's mother in the parking lot of the state courthouse with Davis.  Tr. at 837.[6]  Ms. Merchant further testified that while she was sitting in the back of Davis's car, Davis recounted to her and Ms. Marhone what had

---

[5]      Marhone also contends that the court's denial of these motions deprived him of effective assistance of counsel, a claim that will be discussed in full below.

[6]      Citations to the trial transcript are preceded by "Tr."

happened in court that day with respect to their sons. *Id.* at 837-38. According to Ms. Merchant, Ms. Marhone, who was sitting in the passenger seat, handed Davis a piece of paper and told him, "this is Conrad's alibi." *Id.* at 838. Ms. Merchant further testified that later, outside the presence of Davis, Ms. Marhone told her that the piece of paper was her younger son's graduation ceremony program, and that she gave it to Davis "because she has to do what she has to do so Conrad does not get convicted." *Id.* Ms. Merchant earlier had testified that Ms. Marhone previously had complained to her about Marhone's *not* having attended his younger brother's graduation ceremony, *see id.* at 835-36, so the implication of Ms. Merchant's testimony was that Ms. Marhone helped create a false alibi for her son.

After the prosecutor completed her direct examination of Ms. Merchant, Davis notified the court that the "incident in the car" had never occurred. *Id.* at 839. Acknowledging Davis's felt need to put on the record his own testimony as to whether the incident in the car actually had occurred, the trial court provided Davis with the option of testifying in narrative while continuing to represent Marhone. *Id.* Unsatisfied with this suggested solution, Davis persisted in seeking a recess so that he would be able to procure new counsel for Marhone. *Id.* at 839-40. The trial court was unwilling to relieve Davis as counsel in light of the advanced stage of the proceedings and the complexity of the case, and therefore proposed that Davis first cross-examine Ms. Merchant, and the court and the parties then discuss alternatives to Davis's preferred solution. *Id.* at 841-43. After more discussion, Davis decided not to cross-examine Ms. Merchant and the parties agreed to stipulate to what Davis's testimony would have been regarding the alleged incident in the car with Ms. Merchant and Ms. Marhone. *Id.* at 843-44. The court observed that this solution would allow Davis to balance the record as to whether the incident in the car occurred without his being placed "in a position of being a witness and also

the attorney." *Id.* at 844. The court also gave Davis half an hour to consult with Marhone and another attorney as to Davis's ethical obligations. *Id.* In addition, although Davis continued to argue that it would be appropriate to find another attorney to represent Marhone for the remainder of the trial, the court rejected this suggestion due to its belief that another lawyer would not be capable of "adequately represent[ing] [Marhone], cold at this stage in a murder case." *Id.* at 845-46. The court noted, however, that it was not "ruling anything out." *Id.* at 846.

After the break, the court notified Davis that the prosecutor had offered to strike Ms. Merchant's testimony from the record, in which case the court would instruct the jury to disregard that testimony entirely. *Id.* at 847. The court also noted that other options were available to Davis, including entering into a stipulation with the People regarding Ms. Merchant's testimony. *Id.* at 848. Davis requested additional time to consult with his client and make contact with other attorneys, and the court granted him another hour and 45 minutes to do so. *Id.* At the end of this break, Davis moved for a mistrial on the ground that Ms. Merchant's testimony could reasonably be construed as suggesting that Marhone's defense was concocted in March or April of 2000, and that this appearance of impropriety would impugn Davis in the eyes of the jury and nullify his effectiveness in summation. *Id.* at 851-52. Moreover, Davis argued that a mistrial would allow him to testify at the new trial. *Id.* at 852. The court replied that Ms. Merchant's testimony had not suggested any impropriety on Davis's part, and further stated that beyond identifying perjury on the part of Marhone or a defense witness, Davis was not responsible for evaluating the truthfulness of Marhone's alibi. *Id.* at 853. The court then asserted that Davis's present responsibility was to carry forward and represent Marhone as best he could, and reminded Davis of the list of "less drastic" options available to him for giving his "extremely limited" testimony on the incident in the car, which included Davis's testifying about

the incident and Davis's co-counsel addressing the issue in summation. *Id.* at 854-55. Davis

then stated that he and Marhone had settled on proceeding with the stipulation, Marhone

affirmed as much on the record, *id.* at 855-56, and the court read the following stipulation into

the record:

> Parties stipulate that if Mr. Frank Davis, the attorney, were call[ed] as a
> witness Mr. Davis would testify that Ms. Michelle Marhone never handed
> him a paper in the car and that he never was in a car with Lillith Merchant
> and Michelle Marhone during the pendency of the case. That's a
> stipulation of the parties.

*Id.* at 860. Significantly, that stipulation effectively ended the issue at the trial. Neither Davis

nor the prosecutor even mentioned Ms. Merchant's testimony about the incident in the car in

summation.

    b.  *Analysis*

    I note at the outset that it is inherently inappropriate for a prosecutor to elicit

testimony at trial about events in which defense counsel participated without notifying both the

court and counsel in advance. Depending on, *inter alia*, the role the events in question play in

the trial and defense counsel's own version of the same events, defense counsel can instantly

become a witness. Because of the advocate-witness rule, that is always a problem, and

sometimes the problem is so harmful to the defendant's due process right to a fair trial that a

mistrial is required. *See Ramchair v. Conway*, 601 F.3d 66, 74-76 (2d Cir. 2010).

    When advance notice is provided, the trial judge can decide if the evidence

implicating counsel is admissible at all, and if so, whether its probative value is outweighed by

the fair trial considerations that arise when trial counsel is cast as a witness. Sometimes the

evidence can be presented in a form that avoids the prospect that the jury will regard trial counsel

as both an advocate and a witness. Sometimes, when there is no good reason for the prosecutor's

failure to raise the issue before a jury is selected and jeopardy attaches, the evidence will be precluded to negatively reinforce conduct that needlessly creates the risk of a mistrial. These and other possible means of dealing with a difficult trial situation are preempted when the prosecutor elicits the evidence before the jury without prior warning. At oral argument, Respondent's counsel suggested that the Queens District Attorney might begin to include in the training sessions for Assistant District Attorneys specific training about the perils associated with eliciting evidence that threatens to turn trial counsel for defendants into a witness in the case. Particularly in light of *Ramchair* and this case, I applaud that suggestion and urge the District Attorney to adopt it.

On this record, however, I cannot conclude that the court's denial of Davis's motions for a recess and mistrial deprived Marhone of a fair trial. With respect to the motion for a recess, Davis was given more than two hours to consult with Marhone and other attorneys regarding the best course of action for rebutting Ms. Merchant's testimony about the incident in the car. The fact that Davis did not have sufficient time in which to secure replacement counsel for Marhone did not compromise the fairness of Marhone's trial; as the trial court recognized, Davis's integrity as Marhone's attorney had not been called into question by Ms. Merchant's testimony, Davis was better suited than any replacement counsel would have been to give summation, and the issue raised by Ms. Merchant's testimony could be addressed by far less drastic means than removing Davis from the case.

For similar reasons, I find that the court's denial of Davis's motion for a mistrial did not violate Marhone's right to a fair trial. Initially, the prosecutor unwisely insisted that she be permitted to argue the truth of Ms. Merchant's testimony about the incident in the car even though Davis disputed it. *See* Tr. at 841. However, wiser heads apparently prevailed, and after

the break in the trial, the prosecutor offered to strike Ms. Merchant's testimony from the record, likely the most effective method of removing the issues raised by that testimony from the jury's consideration. When Davis rejected that offer, the stipulation regarding Davis's own version of events became a reasonable alternative, and it adequately allayed Davis's and Marhone's concerns about Ms. Merchant's testimony.

After Ms. Merchant's testimony about an event in which he allegedly participated, Davis rightly complained that he was placed in an important ethical quandary. An attorney should avoid blurring the roles of advocate and key witness. However, in light of how the testimony about the car incident was handled by the skillful trial judge, Davis's testimony was not so crucial to Marhone's defense as to necessitate that he testify in person at trial and step down as Marhone's attorney. The court presented several options for counterbalancing Ms. Merchant's testimony, and after the stipulation to Davis's version of events – the option on which Marhone ultimately settled – was read to the jury, the issue essentially fell out of the case (aside from Davis's renewal of his application for a mistrial after his summation, *see* Tr. at 887-88). Accordingly, I find that the state courts' rejection of Marhone's due process claims was not contrary to or an unreasonable application of clearly established federal law.

2.    *Insufficiency of the Evidence*

Marhone next contends that there was insufficient evidence on which to convict him of depraved indifference murder, and that he also was denied a fair trial due to the inextricable connection between the People's proof on that count and its proof on the felony murder count. A state prisoner challenging the sufficiency of the evidence supporting his conviction "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also id.* at 319 ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

A person commits second-degree "depraved indifference" murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). By contrast, a person is guilty of felony murder when, "[a]cting either alone or with one or more other persons, he commits or attempts to commit robbery, . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants." *Id.* § 125.25(3).

Marhone seizes on the Appellate Division's decision to vacate his depraved indifference murder conviction in an attempt to exculpate himself from his other murder conviction, arguing that the People's proof as to the depraved indifference charge was inextricably interwoven with that of the felony murder charge in "every critical stage" of his trial. Pet. at 5. In continuing to press the argument that there was insufficient evidence on which to convict him of depraved indifference murder despite the fact that the Appellate Division agreed with him on this point, Marhone seeks to invalidate his felony murder conviction as well; he contends that the presence of the depraved indifference murder charge in the case deprived him of a fair trial as to all of the charged homicide offenses. I therefore construe Marhone's claim to contain both a sufficiency challenge to the felony murder conviction as well as a

retroactive misjoinder challenge to the entire trial in light of the vacated depraved indifference murder conviction.[7]

I have no trouble finding that there was sufficient evidence on which to convict Marhone of felony murder. The testimony of Rami Merchant and Jamel Johnakin[8] as to the robbery and killing of Cheung and the events leading up to and following those offenses, along with Marhone's own post-arrest statement inculpating himself in the robbery, supported a finding by a rational factfinder that Marhone and others had robbed Cheung and either Marhone or one of the other participants killed Cheung by striking him with a metal baseball bat in the course of and in furtherance of the robbery.

Turning to Marhone's "prejudicial spillover" claim, *see United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994), there is no reason to conclude that he was prejudiced by the presence of the depraved indifference murder count in the case. The prosecutor did not present any inflammatory evidence on the depraved indifference count that would not otherwise have

---

[7]     As defined by the Second Circuit, retroactive misjoinder "arises where joinder of multiple counts was proper initially, but later developments – such as . . . an appellate court's reversal of less than all convictions – render the initial joinder improper." *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994); *see also United States v. Hamilton*, 334 F.3d 170, 181-82 (2d Cir. 2003). To succeed, a retroactive misjoinder claim requires a showing of "compelling prejudice." *Jones*, 16 F.3d at 493 (compelling prejudice may be found where there is "[p]rejudicial spillover from evidence used to obtain a conviction subsequently reversed on appeal"). Courts confronted with such claims consider whether the "totality of the circumstances requires reversal of some or all of the remaining counts" in the case, and focus in particular on the following factors: (1) whether the evidence on the vacated count was so inflammatory as to "incite or arouse the jury into convicting the defendant on the remaining counts"; (2) the similarity of the evidence and facts underlying the vacated count to those underlying the remaining counts; and (3) the strength of the government's case on the remaining counts. *United States v. Wapnick*, 60 F.3d 948, 953-54 (2d Cir. 1995) (quotation marks omitted).

Although there is not a complete dearth of Supreme Court case law on this subject, *see, e.g.*, *Benton v. Maryland*, 395 U.S. 784, 797-98 (1969) (vacating judgment convicting defendant of burglary and larceny where larceny conviction violated Double Jeopardy, and remanding for consideration of whether admission at trial of evidence on larceny count prejudiced jury in its consideration of burglary count); *Morris v. Mathews*, 475 U.S. 237, 246 (1986) (interpreting *Benton* to provide that, where defendant claims his conviction for an unbarred offense was tainted as a result of its being tried with a jeopardy-barred charge, "a new trial is required only when the defendant shows a reliable inference of prejudice"), it can hardly be said that the aforementioned test constitutes clearly established federal law under the holdings of the Supreme Court.

[8]     Jamel Johnakin was a friend of Marhone and Merchant and typically saw them every day. Johnakin testified that the morning after the robbery, Marhone bragged to him of robbing and beating up Cheung, saying that he had "had fun" in doing so. Tr. at 571.

been offered and admitted on the other counts.  Indeed, the two murder counts emanated from the same facts, and in such a situation, "it is difficult for a defendant to make a showing of prejudicial spillover."  *United States v. Wapnick*, 60 F.3d 948, 954 (2d Cir. 1995).

There also is no support for the claim that the jury was confused into convicting Marhone of felony murder merely because he also had been charged with depraved indifference murder.  The prosecutor argued in summation that the evidence compelled the conclusion that Marhone "acted in concert on a murder and robbery and possession of a weapon."  Tr. at 914; *see also id.* at 932.  Specifically, the prosecutor explained to the jury as follows:

> If you believe during the course of a robbery that someone dies during the course of a robbery, short time thereafter as in this case and you find that the person who dies wasn't part of that robbery that is called felony murder.  During the course of a felony someone is killed and dies thereafter, that is felony murder.  So . . . if you find that the defendant committed a robbery with his friends, with Rami Merchant and you find that because of the injuries sustained during that robbery Mr. Cheung died then the defendant is guilty of felony murder.

*Id.* at 933-34.  She then discussed the elements of the depraved indifference murder count, and clearly distinguished the two types of murder for the jury.  The judge also gave detailed, separate charges to the jury on the elements of the two charged second-degree murder offenses, further reducing the possibility that the jury would conflate its analyses of these two offenses.  *See id.* at 966-68 (depraved indifference murder charge); *id.* at 968-71 (felony murder charge).  In addition, the government presented ample proof of the robbery and killing that formed the basis of the felony murder count.  For these reasons, the existence of the depraved indifference murder count and the jury's finding that Marhone was guilty of that offense do not compel the conclusion that the jury was confused with regard to the felony murder count or diminish the soundness of its finding of guilt on that count.  Furthermore, Marhone was not deprived of a fair trial due to the presence of the depraved indifference murder count in the case.  Marhone was

fully on notice of the forms of murder with which he was charged and was not hampered in mounting his defense as to the felony murder count merely because he also was charged with depraved indifference murder.[9]

Accordingly, even if the retroactive misjoinder principles noted above amounted to clearly established federal law determined by the Supreme Court, the application of them to Marhone's case would not afford him relief.

### 3. *Ineffective Assistance of Counsel*

Marhone asserts two ineffective assistance of counsel claims. In order to establish that his counsel was ineffective, he must prove that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687-94 (1984).

### a. *Trial Court's Refusal To Appoint New Counsel*

As discussed above, the trial court refused to permit Davis to obtain replacement counsel for Marhone when Davis professed his need to testify in response to Ms. Merchant's testimony. Although Davis believed that his live testimony was necessary to rebut Ms. Merchant's testimony, and that his continued representation of Marhone after such testimony would violate the advocate-witness rule, the trial judge brought about an acceptable solution to this quandary that did not require relieving Davis. Indeed, the court's rejection of Davis's requests and its insistence that Davis stay on as Marhone's attorney were animated by the concern that Marhone receive the best possible representation throughout the remainder of the trial. *See* Tr. at 845-46.

---

[9]    I need not address the People's additional contention that this claim was procedurally defaulted because I find that the claim is without merit.

Davis's performance subsequent to Ms. Merchant's testimony did not fall below an objective standard of reasonableness. Although Marhone now claims that Davis's failure to cross-examine Ms. Merchant or attack Ms. Merchant's testimony in summation[10] amounted to ineffective assistance of counsel, I disagree. Davis's decision to abstain from cross-examining Ms. Merchant or mentioning her testimony in summation was certainly strategic; after the court had read the stipulation regarding Davis's testimony into evidence, Ms. Merchant's testimony about the incident in the car essentially disappeared from the case. There was little profit in defense counsel's arguing about an incident that Davis and Marhone asserted had never happened. Marhone also was not prejudiced by these omissions or, more broadly, by Davis's continued representation of him after the stipulation was read to the jury; to the contrary, Marhone affirmed on the record his consent to proceeding with the stipulation, and there is no suggestion that the outcome of Marhone's trial would have been different had Davis testified and obtained replacement counsel for Marhone. I therefore find that the court's denial of Davis's motions did not deprive Marhone of the effective assistance of counsel.

b.  *Counsel's Failure To Challenge The Indictment As Multiplicitous*

Marhone also claims that his counsel was constitutionally ineffective in failing to challenge Marhone's indictment as multiplicitous in counsel's omnibus motion or in any pretrial proceedings. He contends that the multiplicity lay in the three charges relating to Cheung's killing, *i.e.*, depraved indifference second-degree murder, felony murder and first-degree manslaughter. While Marhone acknowledges that the People dismissed the first-degree manslaughter count before the jury was charged, he argues that it nevertheless was impermissible for the People to build their case on the depraved indifference and felony murder theories.

---

[10]     Davis in fact did cast doubt on Ms. Merchant's credibility in summation, although without referring specifically to her testimony regarding the incident in the car. *See* Tr. at 884-85 (suggesting that Ms. Merchant was an "interested witness" because "she may help her son's cause in getting a lesser sentence").

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). Such an indictment "violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once," *id.*, and also "may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes," *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). In passing on a double jeopardy claim of this type, the key inquiry is not whether the same conduct underlies the challenged counts; rather, it is "whether the 'offense' – in the legal sense, as defined by [the legislature] – complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146. Accordingly, when the same statutory violation is charged twice, the critical question is "whether the facts underlying each count were intended by [the legislature] to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) (citing *Bell v. United States*, 349 U.S. 81, 83-84 (1955)).

The relevant inquiry here is whether the New York State legislature intended to authorize separate punishments under separate statutes for Marhone's conduct. *See Chacko*, 169 F.3d at 146. The offense of depraved indifference murder involves "heightened recklessness" on the part of a defendant; the defendant's acts must be "imminently dangerous and present[] a very high risk of death to others." *People v. Hafeez*, 100 N.Y.2d 253, 259 (2003) (quotation marks omitted)[11]; *see also* N.Y. Penal Law § 125.25(2). By contrast, a defendant who commits felony murder need not evince such recklessness in doing so, but must be engaged in the commission or attempted commission of a felony, in the course of and in furtherance of which he or another

---

[11] The People correctly note that the *Hafeez* decision, which clarified the evidence required for a depraved indifference murder conviction, was issued subsequent to Marhone's April 2002 conviction. While *Hafeez* and its progeny shed light on the types of murder the New York State legislature intended to prohibit in New York Penal Law § 125.25(2), my evaluation of Marhone's ineffective assistance claim does not turn on the fact that Davis was without the benefit of subsequent New York case law on depraved indifference murder.

participant kills the victim. N.Y. Penal Law § 125.25(3). Manslaughter in the first degree involves a different mental state from those of the preceding offenses; a defendant commits manslaughter in the first degree when, "[w]ith intent to cause serious physical injury to another person, he causes the death of such person." N.Y. Penal Law § 125.20(1). In addition, it is clear that the New York State legislature intended for manslaughter in the first degree to be distinct from felony murder because § 125.25(3) applies to myriad felonies that differ from the violent conduct contemplated by § 125.20(1).

In light of the differences in the mental states required for the three homicide offenses with which Marhone was charged, along with felony murder's unique element of commission or attempted commission of a felony, the offenses complained of in these three counts of the indictment were not the same. The fact that the Appellate Division ultimately vacated Marhone's depraved indifference murder conviction on the ground that there was insufficient evidence on which to convict him of that offense does not bear on whether the indictment was multiplicitous. Because the three homicide counts in Marhone's indictment were not multiplicitous, Davis's failure to object to the indictment on this ground was not ineffective assistance of counsel.[12]

---

[12] Again, I need not address the People's persuasive argument that this claim was procedurally defaulted because I find that the claim is without merit.

CONCLUSION

For the foregoing reasons, the petition is denied. As Marhone has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Date:   January 20, 2011
        Brooklyn, New York